STATE OF NORTH CAROLINA
v.
DAVID ALLEN McHONE
No. COA07-1097
Court of Appeals of North Carolina.
Filed June 17, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.
Thomas F. Kastner for defendant appellant.
McCULLOUGH, Judge.
On 18 December 2005, the King Police Department set up an impaired driving (DWI) checkpoint on Moore Road in King, North Carolina. The officers involved in the checkpoint posted reflective signs and flares in each direction of travel and situated patrol cars with flashing blue lights in several locations along the checkpoint route. Pursuant to the checkpoint plan and guidelines, the officers were stopping every car traveling in each direction of traffic and requesting those motorists who were suspected of impaired driving to submit to alcohol screening tests.
At approximately 2:17 a.m., David Allen McHone (defendant) stopped at the checkpoint. Officers conducting the stop noticed defendant had bloodshot, red and glassy eyes and that there was a strong odor of alcohol coming from defendant's truck and his person. The officers offered defendant a roadside breath test which defendant refused. Defendant subsequently failed a field sobriety test and was placed under arrest. Defendant was found to have a blood alcohol concentration of 0.10 after his arrest.
On 4 April 2006, defendant was found guilty in district court of impaired driving and defendant appealed to the superior court. Defendant filed a motion to suppress in the superior court, arguing the checkpoint at which he was stopped was unconstitutional. After a hearing on 29 May 2007, the superior court denied defendant's motion. Defendant reserved his right to appeal the denial of his motion to suppress and pled guilty to the charge of driving while impaired. The superior court entered its judgment pursuant to defendant's guilty plea and sentenced defendant to sixty days' imprisonment. Defendant's sentence was suspended and defendant was placed on twenty-four months of unsupervised probation.
Defendant's sole argument on appeal is that the superior court erred in denying his motion to suppress. We disagree.
Our standard of review of an order granting or denying a motion to suppress is "strictly limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [trial court's] ultimate conclusions of law."
State v. Ortez, 178 N.C. App. 236, 243-44, 631 S.E.2d 188, 194-95 (2006) (citation omitted), disc. review denied, appeal dismissed, 361 N.C. 434, 649 S.E.2d 642 (2007). "However, the trial court's conclusions of law are fully reviewable on appeal." State v. McArn, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003).
In reviewing the legality of a checkpoint stop, we apply a two-prong test: (1) the checkpoint must have been established for a constitutional primary purpose, and (2) the checkpoint must have been conducted in a constitutional manner. State v. Rose, 170 N.C. App. 284, 298, 612 S.E.2d 336, 345 (2005), disc. review denied, appeal dismissed, 359 N.C. 641, 617 S.E.2d 656 (2005); see also Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 110 L. Ed. 2d 412 (1990) (holding that DWI checkpoints are constitutional if vehicles are stopped according to a neutral, articulable standard and if the government interest in conducting the checkpoint outweighs the degree of the intrusion). A trial court is not required to "make extensive inquiries into the purpose behind every checkpoint." State v. Burroughs, ___ N.C. App. ___, ___, 648 S.E.2d 561, 565 (2007). However, "where contradictory evidence exists as to the actual primary purpose of a checkpoint program, the trial court must examine the available evidence to determine the actual purpose, because bare assertions of a constitutional purpose cannot be allowed to mask actual purposes that are unconstitutional." Id. "To determine whether a seizure at a checkpoint is reasonable requires a balancing of the public's interest and an individual's privacy interest." Rose, 170 N.C. App. at 293, 612 S.E.2d at 342. "`[I]n judging reasonableness, we look to "[1] the gravity of the public concerns served by the seizure, [2] the degree to which the seizure advances the public interest, and [3] the severity of the interference with individual liberty."'" Id. at 293-94, 612 S.E.2d at 342 (citation omitted).
Here, the superior court's pertinent findings of fact include:
[1] there was a stated programmatic purpose and it is the primary programmatic purpose of this DWI stop, and that is to apprehend drunk drivers and to make our roads and the public safer in so doing . . . .
. . . .
[2] The rules under the [checkpoint plan] set . . . the procedure that is to be followed in every case. Every vehicle is to be stopped. The officer then approaches and may ask for the license and registration as to observe certain features, eyes, speech, et cetera; to then form an independent, and albeit, subjective opinion as to whether or not there's probable cause to justify further intrusion. In this case, the court finds that the guidelines were followed and that in this case the officers both observed the defendant's eyes, the odor of alcohol being strong. . . .
. . . .
[3] [T]he department who came up with this [checkpoint] plan states that this systematic plan has been drawn up in advance in the following location that an impaired driving checkpoint was selected, taking into account the likelihood of detecting impaired drivers, the traffic conditions, the number of vehicles that would likely be stopped, and the convenience of the motoring public. . . .
. . . .
[4] [T]he officer who testified who had knowledge of [whether the plan took into consideration the likelihood of detecting impaired drivers, the traffic conditions, etc.] was not cross examined in any way; and so . . . there was no cross examination to justify looking behind it or beyond it.
The superior court went on to conclude, inter alia, that: (1) "No one would contend that DWI is not a serious situation in this state in the county of Stokes and for the public . . . justif[ying] some intrusion on what would otherwise be individual freedoms[;]" (2) "the checkpoint was constitutionally permissible pursuant to guidelines that are set out and printed and handed out to all officers who participate and that these guidelines on this occasion were followed[;]" and (3) "the checkpoint on this occasion complied with all of the requirements of G.S. [§] 20-16.3[A] in every detail . . . [a]nd that the checkpoint was constitutionally permissible and valid and not violative of any constitutional guarantees of the defendant."
The superior court's conclusions of law are supported by its findings of fact. Here, the DWI checkpoint was established pursuant to a written plan, which on its face complied with the statutory mandates for the establishment of impaired driving checkpoints. See N.C. Gen. Stat. § 20-16.3A (2005). Furthermore, as in Burroughs, "[n]o evidence was brought forward in the case at hand to suggest that the stated purpose of the checkpoint (sobriety), which has been affirmatively declared constitutional by both this Court and the Supreme Court, was a mask for another, unconstitutional purpose." Burroughs, ___ N.C. App. at ___, 648 S.E.2d at 565. The superior court was thus not required to conduct an extensive inquiry behind the purpose of the checkpoint and did not err in concluding the checkpoint was established for a constitutional purpose. The evidence before the superior court further established that the checkpoint at issue was reasonable in its scope and execution, and the superior court did not err in denying defendant's motion to suppress. Defendant's assignments of error are overruled.
Affirmed.
Judges HUNTER and STEELMAN concur.
Report per Rule 30(e).